UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
WAYNE RUIZ,  :
 :
                  Plaintiff,  :
 : **MEMORANDUM & OPINION**
         -against-  : 03-CV-3545(DLI)(ETB)
 :
COUNTY OF SUFFOLK, *et al.*,  :
 :
                Defendants.  :
-------------------------------------------------------------------x

**DORA L. IRIZARRY, United States District Judge:**

In the instant action, plaintiff asserts various violations of his constitutional rights arising from an unlawful search of his jail cell while incarcerated pre-trial at the Suffolk County Correction Center. Plaintiff initially filed his complaint *pro se*, but subsequently the Court appointed *pro bono* counsel. Counsel moved for leave to file an amended complaint, which this Court granted to the extent that plaintiff sought to substitute Corrections Officer Timothy Hopkins for Corrections Officer J. Hickey as a defendant and to add Suffolk County as a defendant. This Court denied plaintiff's motion to the extent plaintiff sought to add Corrections Officers Robert Urban and Mark Hawthorne as additional defendants. (*See* Mem. & Order, Oct. 10, 2008, Doc. Entry No. 112.) Plaintiff then filed an amended complaint in accordance with this Court's October 10, 2008 Order. (*See* Compl., Doc. Entry No. 114.)

Suffolk County now moves for summary judgment and, to the extent this case survives summary judgment, for a bifurcated trial.[1] (Defendant's Motion for Summary Judgment ("Def. Mem."), Doc. Entry No. 142.) Plaintiff opposes both motions. (Plaintiff's Opposition ("Pl. Opp."), Doc. Entry No. 147.) For the reasons set forth more fully below, Suffolk County's

---

[1] Suffolk County's motions are submitted as motions filed on behalf of "Defendants," implying that the individual defendants join in the motions. However, it is clear from the issues briefed, *i.e.*, municipal liability, and the request to bifurcate the trial between individual defendants and Suffolk County, that Suffolk County, alone, is the moving party.

motion for summary judgment is granted and Suffolk County's motion for a bifurcated trial is denied as moot.

## BACKGROUND

Plaintiff was incarcerated at Suffolk County Correctional Facility (the "jail") pending a trial in Suffolk County on an attempted burglary charge. (Plaintiff's Counterstatement of Fact ("Pl. 56.1 Stmt."), Doc. Entry No. 145, ¶ 14.) Plaintiff alleges that, on April 29, 2003, corrections officers entered his wing of the jail to conduct searches of the inmates' cells for contraband. (Plaintiff's Deposition ("Pl. Depo."), attached as Exhibit 7 to Pl. 56.1 Stmt., at 15-17.)

It is the search of plaintiff's cell and the resulting physical altercation between him and the various corrections officer defendants that is the subject of this action. Plaintiff alleges that while the officers conducted the search of his cell, he was directed to stand outside his cell, with his hands on the bars of his cell. (*Id*. at 25-28.) Plaintiff alleges that the officers searching his cell began throwing around his clothing and that he and the officers guarding him began a heated discussion as to whether plaintiff's clothing violated the jail's revised dress code. (*Id*. at 29-32.) Plaintiff alleges that Corrections Officer Rollins Otten ordered plaintiff to turn around and that as soon as he did, Corrections Officer Richard Lorenz punched him in the face. (*Id*. at 31-32.) Plaintiff alleges that none of the other corrections officers directed Lorenz to punch plaintiff, and that plaintiff had no verbal or physical interaction with Lorenz prior to Lorenz punching him. (*Id*. at 32.) According to plaintiff, Corrections Officers Lorenz, Stephen McKeough, and Robert Urban[2] attacked plaintiff. (*Id*. at 32-46, 57-59.) Plaintiff was penalized for the incident with 75 days of solitary confinement. (*Id*. at 77.)

---

[2] Robert Urban is not a defendant in this action.

2

In addition to pursuing claims against the individual corrections officers for their involvement in this incident, plaintiff has filed a § 1983 claim against Suffolk County under *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978). The essence of plaintiff's *Monell* claim is that Suffolk County's appellate review procedures as to job applicants who fail the psychological examination portion of their pre-employment screenings are inadequate and result in the hiring of psychologically unfit corrections officers who use unjustifiable excessive force against inmates.

Among other tests, each applicant for employment as a corrections officer in Suffolk County was required to submit to a psychological examination. The examination consisted of a 500 question written test and an interview with a psychologist retained by the County. The examining psychologist then prepared a report on each applicant, which included a narrative assessment of the applicant's psychological suitability, as well as a letter grade reflecting the applicant's psychological suitability. The letter grades were assigned as follows:

- A. WELL SUITED: The applicant's psychological traits are expected to contribute to above standard performance of essential job functions.

- B. SUITABLE: The applicant's psychological traits are not expected to interfere with the performance of essential job functions.

- C. CONDITIONALLY SUITABLE: Psychological traits could interfere with the performance of essential job functions. The Department should determine whether other data supports these concerns prior to making a final hiring decision.

- C-. MARGINALLY SUITABLE: Psychological traits are expected to interfere with the performance of essential job functions.

- D. POORLY SUITED: Psychological traits have been identified that are expected to significantly interfere with the performance of essential job functions.

F. NOT PSYCHOLOGICALLY SUITED for public safety employment.

(Forensic Psychological Services Report, attached as Exhs. 2 & 3 to Pl. 56.1 Stmt.)

Plaintiff deposed Dr. Louis Gallagher, who served on the appeals committee. (*See* February 4, 2010 Deposition of Dr. Louis Gallagher ("Gallagher Depo."), attached as Exh. 1 to Pl. 56.1 Stmt.) When job applicants failed the psychological examination of their pre-employment screening, they had the opportunity to appeal the result to the three-member appeals committee, of which Dr. Gallagher was the sole psychologist. (*Id*. at 31-33.) The applicant had the opportunity to submit the results from an independent psychological examination, as well as any additional information, such as recommendations from current employers or colleagues. (*Id*. at 32, 35.)

There were no written or standard criteria to guide the appeals committee's review of the materials submitted by the applicants or questioning of the applicants during the interview. (*Id*. at 34-36.) The committee examined the applications for "psychological stability," any alcohol or substance abuse, whether the driving record indicated any issues with impulsivity, work and military history, and whether the applicant had any history of involvement with law enforcement. (*Id*. at 34.) The interviews with the applicants were unstructured and typically lasted no longer than fifteen to twenty minutes. (*Id*. at 35-36, 91.) The committee reviewed appeals from applicants who received grades of C, C-, D, and F,[3] though very few applicants receiving a score of F appealed their results. (*Id*. at 45.) Of the applicants who appealed their results, the appeals committee authorized employment for approximately 25-30 percent. (*Id*. at 44.)

The appeals committee did not receive a copy of the background investigation in reviewing an applicant on appeal. (Gallagher Depo. Tr. at 76.) Dr. Gallagher explained that, if

---

[3] The grading system used by psychologists during the psychological exam of an applicant's pre-employment screening does not include a grade of E.

4

there was something questionable revealed in the background investigation with respect to the applicant's psychological suitability, the County would inform the committee; but, otherwise, the background investigation was "none of [the committee's] business." (*Id*. at 78.)

Notably, Dr. Gallagher and the other members of the appeals committee requested that Suffolk County provide them with the opportunity to review the subsequent employment records of successful applicants regardless of whether they passed the initial psychological exam or not, to determine whether the criteria the appeals committee relied upon were accurate in assessing the suitability of an applicant. (*Id*. at 48.) The committee wanted the opportunity to refine their informal interviewing procedures as they were concerned that there was "something we missed," or "some other variable we should have been looking at." (*Id*.) Suffolk County denied this request stating that the County "couldn't get the police or the corrections officers union to go along with" the records review. (*Id*.)

Plaintiff submitted documentation regarding the pre-employment screenings of two of the corrections officers whom he alleges assaulted him, defendant Lorenz and non-party Urban. Defendant Lorenz received a grade of C- and the examining psychologist indicated that she had concern regarding his potential work as a corrections officer with respect to: judgment, acceptance of criticism, following rules and regulations, interpersonal behavior, dependability, and emotional self-control. (*See* Lorenz Psychological Report, dated March 17, 1999, attached as Exh. 2 to Pl. 56.1 Stmt.) The report recommended that the background investigation explore "this applicant's interpersonal style, dependability, and possible impulsivity." (*Id*. at 7.)

The narrative report indicated that, at the time he applied for employment with Suffolk County, defendant Lorenz was employed as a corrections officer at a prison in Fishkill, New York. (*Id*. at 1.) Earlier in his career, Lorenz had enrolled in the U.S. Air Force Academy, and

5

withdrew after one month. (*Id.*) Lorenz was arrested in 1993 and charged with assault, resulting from a fight with an acquaintance, but the acquaintance dropped the charges against him. (*Id.* at 4.) Lorenz declared bankruptcy in 1992. (*Id.*) When asked why he did not pass the psychological examination, Lorenz stated that he was told that he had failed because "they felt that I couldn't handle the stress of being a corrections officer." (March 21, 2007 Deposition of Richard Lorenz ("Lorenz Depo."), attached as Exh. 13 to Pl. 56.1 Stmt. at 13.)

With respect to his appeal, Lorenz submitted a recommendation from his supervisor at Fishkill Correctional Facility. (*See* Simmons Recommendation, attached as Ex. 4 to Pl. 56.1 Stmt.) Lorenz interviewed with Dr. Gallagher and the other members of the appeals committee. They explained to him why he failed and asked him his opinion on the issues of concern regarding his application. (Lorenz Depo. Tr. at 16.) Lorenz did not recall any further questioning. (*Id.*) The appeals committee approved his application for employment. (*See* May 27, 1999 Appeal Committee Report, attached as Ex. 4 to Pl. 56.1 Stmt.)

Non-party Urban also received a grade of C- and the examining psychologist indicated that she had concern regarding his potential work as a corrections officer, with respect to: judgment, problem solving, following rules and regulations, interpersonal behavior, and emotional self-control. (*See* Urban Psychological Report, dated March 31, 2000, attached as Exh. 3 to Pl. 56.1 Stmt.) The psychologist further noted that: "[The] [b]ackground investigation should explore whether interpersonal behavior has caused any difficulty in previous job performance. His driving record raises some concerns." (*Id.* at 7.) At the time he submitted his application, non-party Urban was employed as a mechanic. (*Id.* at 3.) His driving record included three driving citations and four motor vehicle accidents. (*Id.* at 4.) A lender foreclosed on his home in 1996. (*Id.*)

With respect to his appeal, non-party Urban submitted a report from an independent psychologist, Dr. Nicholas Aiello, Ph.D. (May 31, 2000 Report from Dr. Nicholas Aiello, attached as Exh. 5 to Pl. 56.1 Stmt.) Dr. Aiello concluded that Urban "appears to be an excellent candidate for a Correction Officer position." (*Id* at 3.) Urban interviewed with the appeals committee and the appeals committee authorized his employment as a corrections officer. (July 11, 2000 Appeal Committee Report, attached as Exh. 5 to Pl. 56.1 Stmt.) Dr. Gallagher commented in the Report that Urban was a "marginal candidate" who "appears to have gotten life back on track." (*Id*.)

## DISCUSSION

**I.     Legal Standards**

Under 42 U.S.C. § 1983:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court established that municipalities "can be sued directly under 42 U.S.C. § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690.

"Demonstrating that the municipality itself caused or is implicated in the constitutional violation is the touchstone of establishing that a municipality can be held liable for unconstitutional actions taken by municipal employees." *Amnesty America v. West Hartford*,

7

361 F. 3d 113, 125 (2d Cir. 2004). "A municipality may be liable under § 1983 only if the governmental body itself subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation." *Cash v. County of Erie*, 654 F. 3d 324, 333 (2d Cir. 2011) (internal quotation marks omitted) (quoting *Connick v. Thompson*, ___ U.S. ___, 131 S.Ct. 1359 (2011)); *see also Roe v. City of Waterbury*, 542 F. 3d 31, 36-37 (2d Cir. 2008) (holding that a municipality cannot be held liable under § 1983 for the acts of their employees under the doctrine of *respondeat superior*). "A plaintiff must demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the alleged injury." *Cash*, 654 F. 3d at 333 (quoting *Roe*, 542 F. 3d at 37). In other words, "to establish municipal liability under § 1983, a plaintiff must prove that 'action pursuant to official municipal policy' caused the alleged constitutional injury." *Cash*, 654 F. 3d at 333 (quoting *Connick*, 131 S.Ct. at 1359)).

"A municipal policy may be pronounced or tacit and reflected in either action or inaction." *Cash*, 654 F. 3d at 334. "[W]here a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a deliberate choice, that acquiescence may be properly thought of as a city policy or custom that is actionable under § 1983." *Id*. (quoting *Amnesty Am.*, 361 F. 3d at 126). The Supreme Court has explained that "deliberate indifference" is "a stringent standard of fault," *Connick*, 131 S.Ct. at 1360 (quoting *Board of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997)); and "necessarily depends on a careful assessment of the facts at issue in a particular case." *Cash*, 654 F. 3d at 334. "The operative inquiry is whether those facts demonstrate that the policymaker's inaction was the result of 'conscious choice' and not 'mere negligence.'" *Id*. (quoting *Amnesty Am.*, 361 F. 3d at 128).

A municipality can be held liable for the constitutional violations of its employees if the municipality's hiring procedures were inadequate and indicate "deliberate indifference" towards potential constitutional violations suffered at the hands of its employees. The seminal case addressing inadequate hiring is *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397 (1997). In *Bryan County*, the Supreme Court explained that:

> Where a plaintiff presents a § 1983 claim premised upon the inadequacy of an official's review of a prospective applicant's record . . . there is a particular danger that a municipality will be held liable for an injury not directly caused by a deliberate action attributable to the municipality itself. Every injury suffered at the hands of a municipal employee can be traced to a hiring decision in a "but-for" sense: But for the municipality's decision to hire the employee, the plaintiff would not have suffered the injury. To prevent municipal liability for a hiring decision from collapsing into *respondeat superior* liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged.

*Bryan County*, 520 U.S. at 410. The Court further explained that "[o]nly where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute 'deliberate indifference.'" *Id*. at 411.

The Court further cautioned that:

> Cases involving constitutional injuries allegedly traceable to an ill-considered hiring decision pose the greatest risk that a municipality will be held liable for an injury that it did not cause. In the broadest sense, every injury is traceable to a hiring decision. Where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into *respondeat superior* liability.

*Id*. at 415 ("Congress did not intend municipalities to be held liable unless *deliberate* action attributable to the municipality directly caused a deprivation of federal rights.").

9

In the instant action, plaintiff claims that Suffolk County's failure to provide the appeals committee with written or standardized in depth procedures for reviewing appeals from applicants who failed the psychological examination during their pre-employment screening exhibited a deliberate indifference to the constitutional violations suffered by inmates. Essentially, plaintiff challenges the screening procedures as inadequate, and submits the hiring of Lorenz and Urban as illustrative of the inadequacy of the hiring procedures. The parties did not provide the Court with any authority from the Second Circuit on such claims, nor was the court able to locate any.[4] Plaintiff's claim is distinguishable from the claim at issue in *Bryan County*, as *Bryan County* resolved a § 1983 claim premised upon the failure of a sheriff to conduct a background investigation of one particular applicant. *See Bryan County*, 520 U.S. at 415-16 ("Bryan County is not liable for Sheriff Moore's isolated decision to hire Burns without adequate screening, because respondent has not demonstrated that his decision reflected a conscious disregard for a high risk that Burns would use excessive force in violation of respondent's federally protected right."). Yet, as the foregoing analysis indicates, *Bryan County* remains instructive as to resolution of claims premised on inadequate screening procedures.

Several sister circuits have analyzed claims like that raised in *Bryan County*, in which the plaintiff asserted that a particular hiring decision was inadequate. In each of those cases, summary judgment was resolved in the municipality's favor. For example, in *Morris v. Crawford County*, 299 F. 3d 919 (8th Cir. 2002), the Eighth Circuit affirmed summary judgment in favor of the municipality on a claim in which plaintiff presented evidence that the

---

[4] The Second Circuit has issued numerous opinions resolving claims premised on a related issue, inadequate training. *See, e.g.*, *Amnesty Am.*, 361 F. 3d at 129-31. These cases are distinguishable, as the Supreme Court explained in *Bryan County*, because "predicting the consequence of a single hiring decision, even one based on an inadequate assessment of a record, is far more difficult than predicting what might flow from the failure to train a single law enforcement officer as to a specific skill necessary to the discharge of his duties." *Bryan County*, 520 U.S. at 410. Thus, inadequate hiring cases impose a higher burden on plaintiffs than inadequate training cases.

10

municipality hired a corrections officer who used excessive force on plaintiff even though the municipality knew that the officer had slapped an inmate at another prison in the past, and that two of the officer's prior girlfriends sought *ex parte* protective orders against him. *See, e.g.*, *Morris*, 299 F. 3d at 925-26. The Eighth Circuit explained that the plaintiff failed to "satisfy *Bryan County*'s requirement of a 'strong' causal connection between [the corrections officer's] background and the specific constitutional violation alleged." *Id*. at 925.

Unsavory information in an applicant's past, such as prior arrests, even a prior arrest for a violent felony, and the municipality's failure to uncover that background information, is insufficient to establish an inadequate hiring claim against a municipality. In *Barney v. Pulsipher*, 143 F. 3d 1299 (10th Cir. 1998), two former inmates were sexually assaulted by a corrections officer who was hired in accordance with the municipality's hiring procedures, despite having a prior arrest for underage drinking and numerous speeding tickets. *Id*. at 1308-09. The Tenth Circuit affirmed summary judgment in favor of the municipality, explaining that the link between the information in the correction officer's background and the asserted constitutional violation was weak. *Id*. at 1309. Indeed, "[e]stablishing municipal liability in the hiring context requires a finding that '*this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff.'" *Id*. at 1308 (emphasis in original).

A much more challenging fact pattern for plaintiff is found in *Benavides v. Wilson*, 955 F. 2d 968 (5th Cir. 1992). In *Benavides*, the Fifth Circuit affirmed summary judgment in favor of the municipality on a claim in which the plaintiff presented evidence that the two corrections officers who caused his injuries were hired despite histories of psychological disorders, including related hospitalizations and prescriptive drug treatment. *Id*. at 974-75. At the time that they applied for employment, their treating physicians had issued them "fit-to-work" letters, which

the municipality relied upon in deciding to hire them. *Id*. at 971. Plaintiff asserted that the municipality should have contacted the physicians to obtain more detailed information regarding their medical histories. Yet, as the Fifth Circuit held, "[t]he fact that [the sheriff] failed to research [the corrections officer's] medical histories does not indicate that [the sheriff] was deliberately indifferent in hiring . . . such people to work as jailers" as the "evidence from which a jury might infer that the . . . jail employees were unfit for service at the time they were hired is thin indeed." *Id*. at 975.

It is clear that these decisions indicate reluctance to hold municipalities liable for challenges to particular hiring decisions. The only circuit to address challenges to hiring procedures in general, dismissed the claim for failing to meet the strict standards for municipal liability articulated in *Bryan County*.

In *Young v. City of Providence*, 404 F. 3d 4 (1st Cir. 2005), two Caucasian police officers shot and killed an off-duty African-American police officer, all of whom were responding to a distress call. *Id*. at 9. Plaintiff discovered that one of the officers, a former employee at a juvenile detention facility, had used excessive force against residents several times and had been disciplined at least once. *Id*. at 20. He had been required to attend anger control treatment after ripping a telephone off the wall out of anger with a resident. *Id*. Further, he had a prior arrest for assaulting an African-American off-duty police officer and referred to that officer by using a racial slur. *Id*. There was evidence to suggest that one former supervisor contacted the police department and expressed concerns about the officer's fitness for duty. *Id*. The municipality conducted a background check, and the police officer participated in pre-employment screening, including physical and cognitive testing, as well as a psychological examination and an interview with a three-person oral review board. *Id*. at 20-21. The plaintiff asserted that the municipality

engaged in a pattern of inadequate screening of applicants as there was no guidance as to how to conduct a background check of an applicant. *Id*. at 21. Plaintiff also submitted evidence that applicants were hired despite initially failing their background checks, and of general corruption in the force with respect to hiring. *Id*.

The First Circuit concluded that the municipality was not liable for the deficient hiring of a police officer who engaged in excessive force. *Id*. at 30-31. In reaching its conclusion, the First Circuit explained that evidence of untrained background investigators, and background checks that were not reviewed by the oral review board and ignored by policymakers did not demonstrate "the sort of hiring pattern that could lead to an inference of deliberate indifference." *Id*. at 31. The First Circuit recognized that "[a] pattern of previous bad hiring decisions leading to constitutional violations . . . would likely be necessary to get one outside the 'single incident' analysis in [*Bryan County*]"; but failed to find that the plaintiff, despite submitting evidence of "flawed" hiring procedures, had met this burden. *Id*. at 31.

## II. Application

As set forth above, plaintiff seeks to hold Suffolk County liable for deficient hiring procedures, generally, as opposed to the deficient hiring of Lorenz and Urban as individual incidents. In doing so, plaintiff attempts to take his claim outside the *Bryan County*, single-incident analysis. In support of his claim, plaintiff has submitted reports from the pre-employment psychological examinations given to Lorenz and Urban, which indicate that the psychologist had a number of concerns regarding their ability to handle the stresses of working in a prison. Plaintiff submitted the records associated with their appeals to the appeals committee and the cursory notes taken during the appeal interview by the only psychologist present, Dr. Gallagher. Dr. Gallagher's notes and testimony indicate that he informed the

applicants of the areas of concern regarding their psychological suitability, asked them for explanations, and discussed incidents in their backgrounds, such as motor vehicle accidents and violations, prior acts of violence, and financial strains.

Although the Court is troubled by the lack of standardized procedures for the appeals committee and the brief and unstructured nature of the interviews of the candidates appealing psychological reports, the Court is unable to distinguish the facts of plaintiff's claim from those in *Young*. If anything, the challenge to the hiring procedures that was asserted in *Young* was supported by stronger evidence of a pattern of deficient hiring practices than that submitted by plaintiff in this case. The plaintiff in *Young* was closer to establishing the causal link between systematic inadequate hiring procedures and the constitutional harm suffered by the plaintiff than the claim in this case, and yet that claim did not survive summary judgment. The Court is not bound by *Young*, but *Young* suggests that even when greater evidence of causality is provided, plaintiffs cannot sustain a challenge to general hiring procedures absent "[a] pattern of previous bad hiring decisions leading to constitutional violations." *Young*, 404 F. at 4.

The Court recognizes that the appeals committee itself expressed concern regarding the adequacy of its procedures and that Suffolk County did not address its concerns because of difficulty in getting the consent of its corrections officers to disclose their employment records, in which they have an expectation of privacy. However, it does not necessarily follow that, if Suffolk County had granted the appeals committee's request and the appeals committee reviewed employee records and drafted standardized procedures, Lorenz and Urban would not have been hired. Lorenz and Urban submitted strong curative evidence in support of their appeals. Lorenz submitted a report from his supervisor at another corrections facility, who unequivocally supported Lorenz's application for employment with Suffolk County. Urban submitted a report

14

from a psychologist who examined him and concluded that he was fit for employment. Further, neither Lorenz nor Urban failed their initial psychological screenings. Both candidates had an average, or "marginal," overall score.

Finally, even if plaintiff's claim is analyzed under the single-incident analysis of *Bryan County*, this Court must grant summary judgment in favor of Suffolk County, as plaintiff has failed to "satisfy *Bryan County*'s requirement of a 'strong' causal connection between [the correction officer's] background and the specific constitutional violation alleged." *Morris*, 299 F. 3d at 925; *see also Nassau County Employee "L" v. County of Nassau*, 345 F. Supp. 2d 293, 298-99 (E.D.N.Y. 2004) (dismissing an improper hiring claim against the municipality for failure to "allege the required nexus between [the employee's] background and his alleged sexual misconduct," as the employee's background contained an unspecified felony conviction, a filing for bankruptcy, and outstanding judgments, but no prior sexual misconduct).

Plaintiff is unable to establish *Monell* liability, whether under the analysis for single-incident claims or general hiring procedure claims. The Court has not reached this conclusion lightly, but as the case law in this circuit and other circuits indicates, plaintiffs asserting such claims must overcome a very high evidentiary burden to survive summary judgment. The evidence in this case did not meet the Supreme Court's heightened standard. Accordingly, Suffolk County's summary judgment motion is granted.

## III. Motion to Bifurcate Trial

The Court has granted Suffolk County's motion for summary judgment, thereby disposing of the claims asserted against Suffolk County. Accordingly, Suffolk County's motion to bifurcate the trial is denied as moot.

## CONCLUSION

For the reasons set forth above, Suffolk County's motion for summary judgment is granted and Suffolk County's motion for the bifurcation of trial is denied as moot. Accordingly, this action is dismissed as to Suffolk County and the Suffolk County Sheriff's Department. This action shall proceed under the pretrial supervision of the magistrate judge as against the remaining individual defendants.

SO ORDERED.

Dated: Brooklyn, New York
      April 3, 2012

/s/
DORA L. IRIZARRY
United States District Judge